# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

LOIS JOINER,
in her capacity as Personal
Representative of the estate of
PETE WHITE
                Plaintiff

        v.                                                06-CV-279 JCH/LFG

JONATHON O'NIEL and
RONALD LICHT, JR.,

        Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came before the Court on Plaintiffs' *Motion to Award Damages* [Doc. 52] and *Motion for Attorney Fees and Costs* [Doc. 54], both filed on April 13, 2009. The Court previously granted default judgment on liability to Plaintiff in an Order dated June 21, 2007 [Doc. 34]. Due to Plaintiff's ill health, the Court agreed to forego a damages hearing and accept affidavits as proof of damages. Having reviewed Plaintiff's briefs, affidavits, and associated attachments, and being otherwise fully informed, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff Lois Joiner ("Ms. Joiner") is the Personal Representative and mother of the initial Plaintiff in this action, Pete White ("Mr. White").

2. Mr. White died in July, 2007.

3. Defendants Jonathon O'Niel and Ronald Licht, Jr. were two owners of Crown Acquisition and Recovery, LLC ("Crown").

4. Crown became defunct in or about March 2006.

5. Crown was a foreign corporation doing business in New Mexico.

6. Crown's principal business was the collection of consumer debts.

7. Crown regularly collected or attempted to collect debts owed or due or asserted to be owed or due another.

8. Defendants were personally active in the day to day operations of Crown, including the training and supervision of the debt collectors.

9. Crown attempted to collect on a debt alleged to be Mr. White's beginning in February 2006.

10. A debt collector from Crown called Mr. White in February 2006 alleging that Mr. White owed a large debt from a loan made in 1995. The debt collector told Mr. White that he was being sued for the debt, and that he would have to appear in court somewhere in the midwestern United States in two days. The debt collector then demanded immediate payment of the debt in return for not proceeding to trial immediately.

11. The debt collector stated that he worked at the law office of attorney Laura Tulyk-Rossi, and that Ms. Tulyk Rossi was the attorney for the debt holder.

12. Mr. White was upset by the call, because he was unfamiliar with the alleged debt.

13. Mr. White was terminally ill, and was concerned that the debt could be enforced against him or his estate.

14. Mr. White contacted an attorney, Sharon Fleming ("Ms. Fleming") to stop harrassing telephone calls and debt collection activities by Crown.

15. When Ms. Fleming contacted the debt collector, he denied working for a debt collection agency, said that the Fair Debt Collection Practices Act did not apply to his activities,

and said that the worked for attorney Laura Tulyk-Rossi.

16. Ms. Fleming attempted to verify the alleged debt by asking the collector to provide information to Mr. White about the name of the original creditor and the amount of the alleged debt.

17. The collector claimed that Crown had sent a demand letter to Mr. White several days earlier, but Mr. White never received a letter from Crown.

18. When Ms. Fleming attempted to find out the date of the last payment on the alleged debt, because it appeared to her to be time barred, the collector told her that they had no information on the date of the last payment because the attorney for whom the collector worked would have to pay $700 to retrieve information about payment history, which she refused to do until they went to court to collect the debt.

19. The collector also told Ms. Fleming that the charge-off date, which the collector did have, rather than the date of the last payment, determines when the statute of limitations runs.

20. The collector told Ms. Fleming that he forwarded written verification of the debt to Mr. White, including the charge-off date and other information to identify the account, but neither Ms. Fleming nor Mr. White never received any such information.

21. Mr. White was so distressed by the calls from the debt collector and their refusal to identify the debt that he looked all over his house for items to pawn to satisfy the debt so that it would not be enforced against his estate when he died.

22. At the time of receiving the debt collection calls, Mr. White was undergoing chemotherapy and was weak and sick from the treatment.

23. The debt collector told Ms. Fleming that they were aware that he was terminally ill.

24. The debt collector falsely stated that it had filed suit against Mr. White.

25. The debt collector refused to validate the debt, as requested by Ms. Fleming, failed to notify Mr. White of his right to dispute the validity of the debt and the procedures for doing so, and failed to cease its attempts to collect the debt until it provided validation of the debt.

26. Crown intended to intimidate, harass, abuse, and frighten Mr. White by causing him to believe that Crown was pursuing legal action against him and that his assets would be seized. Crown engaged in this behavior despite knowing that Mr. White was suffering from a terminal illness.

27. Because of the conduct of Defendants' company, Mr. White suffered actual damages including aggravation and emotional distress.

**CONCLUSIONS OF LAW**

1. This Court has subject matter jurisdiction under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331, 1337 and jurisdiction over the supplemental claims under 28 U.S.C. § 1367.

2. This Court has *in personam* jurisdiction over Defendants by virtue of Crown's conduct in New Mexico and through service of process on Defendants. *See Russey v. Rankin*, 837 F.Supp. 1103 (D. N.M. 1993).

3. Mr. White was a "consumer" as defined by the FDCPA, 15 U.S.C. § 1962a(3).

4. Crown was a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1962a(6).

5. The actions of Crown violated the FDCPA, 15 U.S.C. §§ 1692e and 1692g.

6. Ms. Joiner, as Personal Representative of Mr. White, is entitled to recover statutory

  damages, actual damages, reasonable attorney's fees and costs under the FDCPA and the New Mexico Unfair Practices Act ("UPA"), NMSA § 57-12-1 *et seq*.

7. Because Defendants' actions were willful, Ms. Joiner is also entitled to recover treble actual damages under the UPA.

8. However, Ms. Joiner must elect to recover actual damages under the FDCPA or treble actual damages under the UPA. She cannot recover both.

Dated this 20th day of May, 2009

_____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE